**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CHRISTOPHER HOLM,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL LIFE ASSURANCE COMPANY OF BOSTON and BANK OF AMERICA,<br><br>Defendants. | : | C.A. No. 04-432 |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Liberty Mutual Life Assurance Company of Boston ("Liberty Mutual") and Bank of America Corporation ("Bank of America"), by and through their undersigned attorneys, and pursuant to Fed. Rule Civ. P. 56 and Local Rule 12.1(a)(1), hereby file their Motion for Summary Judgment to dismiss any and all claims asserted by Plaintiff Christopher Holm ("Holm") or ("Plaintiff") in his Complaint. Plaintiff claims that Defendants wrongfully denied him short-term disability benefits to which he was entitled. However, like most employers, the Bank's disability policy applies only to *current* employees of the Bank, and a claimant must be employed by the Bank at the time he or she applies for benefits. It is undisputed that Plaintiff did not apply for benefits until more than a month after he resigned. As such, he was no longer covered by the Bank's short-term disability policy at the time he filed his disability claim.

In support of this Motion, Defendants rely upon their supporting Memorandum of Law and Statement of Material Facts As to Which There Is No Genuine Issue to be Litigated, submitted concurrent with this Motion.

WHEREFORE, Defendants Liberty Mutual and Bank of America respectfully request this Court to grant their Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON AND BANK OF AMERICA CORPORATION**
By their Attorneys,

Dated: July 25, 2005

Gary W. Flanagan (#6632)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 528-5858

**CERTIFICATION OF SERVICE**

This is to certify that on the 25th day of July, 2005, I served the foregoing document via hand delivery to:

Anthony J. Gianfrancesco, Esq.
Baluch, Gianfrancesco, Mathieu & Szerlag
155 South Main Street
Suite 101
Providence, RI 02903
(401) 331-1434

Gary W. Flanagan

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHRISTOPHER HOLM,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL LIFE ASSURANCE COMPANY OF BOSTON and BANK OF AMERICA,<br><br>Defendants. | C.A. No. 04-432 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 12.1(a)(1), Defendants Liberty Mutual Life Assurance Company of Boston ("Liberty Mutual") and Bank of America Corporation ("Bank of America" or the "Bank") (Liberty Mutual and Bank of America may sometimes hereinafter be collectively referred to as, "Defendants") respectfully submit their Memorandum of Law in Support of Defendants' Motion for Summary Judgment.

## I. INTRODUCTION

This is a simple, straightforward case. Plaintiff Christopher Holm ("Holm") or ("Plaintiff") claims that Defendants wrongfully denied him short-term disability benefits to which he was entitled.[1] However, as with most employers, the Bank's disability policy applies only to *current* employees of the Bank, and an individual seeking coverage must be an active employee when he or she applies for benefits. It is undisputed that Plaintiff did not apply for benefits until more than a month after he resigned. As such, he was no longer covered by the

[1] Although Plaintiff claims that his claim arises under the Employee Retirement Income Security Act ("ERISA"), codified at 28 U.S.C. §1001 *et seq.*, the Bank's short-term disability plan policy specifically provides that it is *not* an ERISA plan.

Bank's short-term disability policy at the time he filed his disability claim, and Defendants were justified in denying him benefits.

Defendants move for summary judgment on the grounds that no material issue of fact exists, and Holm cannot offer evidence sufficient to establish his claim. Specifically, Holm cannot establish a *prima facie* case of breach of the short-term disability policy since he cannot show that he was covered by the Bank's disability policy at the time he applied for benefits. For these reasons, Defendants respectfully request that the Court enter summary judgment in favor of Defendants.

## II. STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO GENUINE ISSUE TO BE LITIGATED

### A. Background and Parties

1. Christopher Holm is a former employee of Fleet National Bank ("Fleet"), a predecessor of Defendant Bank of America. Affidavit of Holly Stephens ("Stephens Aff."),[2] ¶ 2.

2. Effective April 1, 2004, Fleet National Bank's holding company, FleetBoston Financial Corporation, merged with Defendant Bank of America.[3] Id., ¶ 3.

3. At all relevant times, Liberty Mutual was Fleet's "Managed Disability Vendor" and the plan administrator with respect to Fleet's disability benefit plan. Affidavit of Dawn Tillinghast ("Tillinghast Aff."),[4] ¶ 3. In that capacity, Liberty Mutual provided claims management advice to Fleet and handled the administration of claims for benefits on the Bank's behalf. Id. Fleet, not Liberty Mutual, made the actual benefits payments to the claimants. Id.

---

[2] The Affidavit of Holly Stephens is attached hereto as Exhibit 1.
[3] For purposes of clarity, Defendants will use "Fleet" or the "Bank" throughout this Memorandum when referring to Plaintiff's employer.
[4] The Affidavit of Dawn Tillinghast is attached hereto as Exhibit 2.

## B. Holm's Employment History at Fleet

4. Christopher Holm first began working for Fleet in March 1990 as a Financial/Stats Consultant in Providence, Rhode Island. Stephens Aff., ¶ 4; Employee Information Screen.

5. In or around September 1999, Holm resigned from Fleet because he was dissatisfied with his hours. Stephen Aff., ¶¶ 4-5; Employee Information Screen.

6. In or around December 2000, Holm returned to Fleet as a Senior Project Analyst in Fleet's Consumer Lending Sales & Marketing Administration Department in Providence. Stephens Aff., ¶ 6; Offer Letter. In that role, Holm earned a salary of $67,000 annually, and reported to Department Manager Steven Lacroix. Stephen Aff., ¶ 6; Offer Letter.

7. In September 2003, Holm gave Lacroix notice of his resignation. Affidavit of Steven Lacroix ("Lacroix Aff."),[5] ¶ 3. Holm advised Lacroix that he was resigning for personal reasons, and that his last day of work would be in about 60 days. Id.

8. On October 31, 2003, his last day of work, Holm sent Lacroix an email wishing him luck in the future, and attached a formal letter of resignation. Lacroix Aff., ¶ 4; Resignation Email; Resignation Letter. Holm's Resignation Letter states:

> Steven,
>
> Due to a variety of personal reasons I regret to inform you that I will be leaving FleetBoston effective October 31, 2003. It has been my professional and personal pleasure to have worked with you and my other colleagues at Fleet over the past 13 years. I wish you all the best in the future and take care of yourself.
>
> Sincerely,
> Christopher J. Holm

Lacroix Aff., ¶ 4; Resignation Letter.

[5] The Affidavit of Steven Lacroix is attached hereto as Exhibit 3.

9. Holm's last day at Fleet was October 31, 2003. Stephens Aff., ¶ 7; Employee Information Screen. Consistent with Holm's letter of resignation, Fleet coded Holm's separation from employment as, "Voluntary – Personal Reasons." Stephens Aff., ¶ 7; Employee Information Screen.

C. **Fleet's Short-Term Disability Plan, Available to Eligible *Current* Employees**

10. Eligible, current employees of the Bank are covered by its Short-Term Disability ("STD") Policy. Stephens Aff., ¶ 8.

11. The STD Policy applies to Fleet employees only while they are employed by the Bank. Stephens Aff., ¶ 8; STD Policy; Summary Plan Description ("STD").

12. The STD Policy presumes that a claimant is a Fleet employee at the time an employee files a claim for benefits. The Policy states:

> All domestic full-time regular and part-time regular employees regularly scheduled to work 20 or more hours per week are eligible. Temporary employees, employees regularly scheduled to work less than 20 hours per week, and seasonal employees are excluded.

Stephens Aff., ¶ 8; STD Policy, Bates No. 0086.

13. Additionally, the STD policy provides that in order to receive benefits, a claimant must be, among other things, "actively employed" by Fleet. Stephens Aff., ¶ 8; STD Policy; SPD. An employee is "actively employed" by Fleet when he or she is:

- ***present at the employer's place of business… on the scheduled effective date of coverage***; and

- Performing the essential duties of his/her regular occupation.

(Emphasis added). Stephens Aff., ¶ 8; STD Policy, Bates No. 0092; SPD, Bates No. 0101.

14. Generally, eligible employees whose claims are approved receive STD benefits until an enumerated disqualifying event occurs. Stephens Aff., ¶ 8; STD Policy, Bates No. 0089; SPD, Bates No. 0104. One of the disqualifying events that cuts off a claimant's benefits is the claimant's voluntary resignation. Stephens Aff., ¶ 8; STD Policy, Bates No. 0089; SPD, Bates No. 0104.

15. Specifically, the STD Policy provides that an employee's STD benefits will end as of "your voluntary resignation (although employees are discouraged from resigning while disabled and eligible for STD benefits)." Stephens Aff., ¶ 8; STD Policy, Bates NO. 0089; SPD, Bates NO. 0104.

**D. Procedure for Filing Claims**

16. The STD Policy instructs employees who wish to file STD claims to call Fleet's Managed Disability Vendor, Liberty Mutual. Stephens Aff., ¶ 8; STD Policy, Bates No. 0087; SPD, Bates No. 0105.

17. All benefits claims are filed telephonically, and the claims administration process begins with an "intake" procedure. Tillinghast Aff., ¶ 4.

18. At the intake stage, Liberty Mutual creates a paper and electronic "Claim Notes" file, and all subsequent actions taken with respect to an employee's claim are logged in the Claim Notes database. Tillinghast Aff., ¶ 4.

19. As part of the administrative process during intake, Liberty Mutual completes a number of fields in the electronic Claim Notes database. Tillinghast Aff., ¶ 5. One of these fields is commonly referred to as the "date of disability." Id.

20. For purposes of the Liberty Mutual intake, "date of disability" does not refer to any aspect of a claimant's medical condition. Id., ¶ 6. Rather, "date of disability" refers to the

first day a claimant is unable to perform the material duties of his job on an active employment basis (i.e., the first day the claimant is unable to work). Id. A claimant must be actively employed by Fleet on his "date of disability" – the first day the claimant is unable to work – in order to be eligible to receive STD benefits. Id.

**E. Holm Applies for Short-Term Disability Benefits More than a Month After He Resigned; Liberty Mutual Denies Holm's Claim; Holm Takes His Claim Through the Appeals Process; Defendants Uphold the Denial of Benefits**

***1. Liberty Mutual Denies Holm's Claim at the Initial Stages***

21. On December 11, 2003, Holm filed a claim for STD benefits. Tillinghast Aff., ¶ 7; Claim Notes, Bates No. 0007.

22. Brooke Stewart, a Case Manager at Liberty Mutual, reviewed Holm's claim at the initial stage. Tillinghast Aff., ¶ 8.

23. In reviewing Holm's claim, Stewart spoke with the Bank, and learned that Plaintiff had resigned from Fleet, and was therefore no longer eligible to receive STD benefits. Tillinghast Aff., ¶¶ 7, 9; Claim Notes, Bates No. 0003.

24. Therefore, on or around February 23, 2003, Ms. Stewart sent a letter to Holm advising him that he was no longer eligible for disability benefits. Tillinghast Aff., ¶ 10; 2/23/04 Letter. Ms. Stewart explained the denial of his benefits as follows:

> I spoke with your supervisor Steven Lacroix on February 19, 2004. He indicated that you had resigned from Fleet as of November 1, 2003. In addition, I spoke with Fleet Corporate HR and they confirmed your resignation effective November 1, 2003. Since your date of disability is November 3, 2003 and your resignation was effective November 1, 2003, you are not eligible to receive short-term disability benefits with Fleet and we are unable to approve your claim.
>
> Tillinghast Aff., ¶ 10; 2/23/04 Letter.

25. Liberty Mutual's statement that Holm's "date of disability" is November 3, 2003 means only that had Holm been eligible for benefits, the earliest date on which he could have

received such benefits would have been November 3, 2003 – at which time he was no longer employed by Fleet. Tillinghast Aff., ¶ 11.

26. In March 2004, Holm's attorney wrote to Ms. Stewart advising her that her "assertion that Mr. Holm's date of disability is November 3, 2003 is incorrect," as Plaintiff had suffered from Multiple Sclerosis for many years. Tillinghast Aff., ¶ 12; 3/15/04 Letter. Thereafter, Plaintiff appealed the denial of benefits. Tillinghast Aff., ¶ 13; 4/30/04 Letter.

27. In or around May 2004, Appeal Review Consultant Ann Berry reviewed Holm's claim file, noting that his coverage had ended as of November 1, 2003. Tillinghast Aff., ¶ 15; Claim Notes, Bates No. 0001. As such, Ms. Berry advised Holm that Liberty Mutual was upholding its earlier denial of his claim. Tillinghast Aff., ¶ 15; 5/25/04 Letter. Ms. Berry advised Plaintiff as follows:

> According to FleetBoston Financial Corporation, Mr. Holm's last day worked was October 31, 2003, and he resigned effective November 1, 2003. Therefore his Short Term Disability coverage terminated effective November 1, 2003.

Tillinghast Aff., ¶ 15; 5/25/04 Letter.

### *2. Liberty Mutual Upholds the Denial of Benefits at the Second Level of Appeal*

28. Plaintiff asked Liberty Mutual to reconsider its decision in June 2004. Tillinghast Aff., ¶ 16; 6/1/04 Letter. As such, Liberty Mutual referred Holm's claim to the second level of the appeals process. Tillinghast Aff., ¶ 17; Second Appeal Referral.

29. On or around June 7, 2004, Appeal Review Consultant Dawn Elynn Tillinghast reviewed Holm's file. Tillinghast Aff., ¶ 18. Like those before her, she concluded that Holm "was no longer eligible for Short Term Disability benefits effective November 1, 2003..." Tillinghast Aff., ¶ 18; 6/7/04 Letter; Appeal Recommendation. As such, Liberty Mutual denied

Holm's claim for benefits at the second level of appeal. Tillinghast Aff., ¶ 18; 6/7/04 Letter; Appeal Recommendation.

### 3. *The Bank Upholds the Denial of Benefits at the Third and Final Stage of Appeal*

30. The third and final stage of the appeals process is administered by Fleet, not Liberty Mutual. Stephens Aff., ¶ 9. Holm appealed the denial of benefits to Fleet at the third and final stage, and the Bank upheld the denial of Plaintiff's STD claim for the same reasons set forth in the prior determinations. Id.; 9/9/04 Letter.

31. The Bank wrote to Plaintiff and, once again, explained the basis for the denial of benefits:

> ...The policy also states an associate must be actively at work in order to be eligible for the benefit and, in Mr. Holm's case, he was not actively at work on 11/3/03, his first date of disability.
>
> Stephens Aff., ¶ 9; 9/9/04 Letter.

32. In or around October 2004, Plaintiff filed a Complaint alleging that "Defendants' failure to pay the benefits due the plaintiff is a breach of its obligations under the [short-term disability] policy." Complaint, ¶ 11.

## III. ARGUMENT

### A. Standard of Review

Summary judgment is appropriate in this case because there is no genuine issue of material fact and Plaintiff's contentions are untenable as a matter of law. See Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-8, 106 S. Ct. 2505 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 580, 106 S. Ct. 1348 (1986). The Supreme Court has emphasized the judicial policy favoring use of summary judgment for the prompt and efficient

resolution of claims without factual issue or legal merit. Celotex Corp., 477 U.S. 317, 327 (1986) (summary judgment is an integral part of the judicial process that serves the just, speedy and inexpensive determination of actions).

### B. It is Undisputed that Plaintiff was Not Covered by Fleet's Short-Term Disability Plan at the Time He Filed for Benefits, and Defendants are Therefore Entitled to Summary Judgment

Defendants did not breach the Short-Term Disability policy at issue in this case. Pursuant to the terms of the STD Policy, and as explained by the Summary Plan Description, in order to be eligible to receive disability benefits, a claimant must be a full-time or part-time employee of the Bank. Stephens Aff., ¶ 8; STD Policy; Bates No. 0086. Additionally, to be eligible, a claimant must work for Fleet on an "active employment basis." Stephens Aff., ¶ 8; STD Policy, Bates No. 0089; SPD, Bates No. 0104. This means that, at the time the claim is filed, the claimant must be employed on the first day of coverage (known in insurance parlance as the "date of disability"), which is the first day that the claimant is unable to perform the material duties of his job. Tillinghast Aff., ¶ 6.

There can be no dispute that Plaintiff was not covered by the STD plan at issue in this case. In mid-September 2003, Holm gave notice of his intention to resign. Thereafter, Holm resigned and left employment with the Bank on Friday, October 31, 2003. Lacroix Aff., ¶¶ 3-4; Resignation Email; Resignation Letter. Therefore, as of November 1, 2003, Holm was no longer covered by Fleet's STD Plan Policy. **Holm first filed for STD benefits on December 11, 2003 – more than a month after he quit.** Tillinghast Aff., ¶ 7. Defendants were unable to approve his claim for benefits because, as explained in numerous correspondence, he was not eligible for benefits, since he had already resigned from Fleet. See Moriarty v. United Tech Corp. Represented Employees Retirement Plan, 158 F.3d 157, 160-61 (2d Cir. 1998) (granting plan

administrator's summary judgment motion on the grounds that the summary plan description did not permit participant to receive benefits for claim based on disability that occurred after his employment terminated)

To the extent Plaintiff claims that Defendants wrongfully denied him benefits because Holm was diagnosed with Multiple Sclerosis years ago, such an argument fails. As explained in numerous correspondence to Plaintiff, the date of a diagnosis is irrelevant. See e.g., Stephens Aff., ¶ 9; 9/9/04 Letter. Defendants never based any determination with respect to Plaintiff's benefits on Holm's medical condition. Rather, a claimant's earliest possible date of coverage is the first date that he is unable to perform his job for a medical reason while still actively employed by the Bank. Tillinghast Aff., ¶ 6. Defendants hypothetically characterized Holm's earliest possible date of disability as November 3, 2003 because that was the first business day after the last day Holm performed his job (i.e., the first business day after his resignation). Id., ¶¶ 6, 11. Inasmuch as Holm was not actively employed on his "date of disability," (the earliest date that his coverage could have commenced), Defendants denied his claim.

Plaintiff, himself, admitted that he understood why he was not eligible for STD benefits. Liberty Mutual's records reflect that Brooke Stewart explained to him on February 25, 2004 that he was ineligible for benefits because he had resigned, and Holm "indicated he understood," and stated that the "only reason he had applied was because someone at [Liberty Mutual] or at Fleet told him he needed to apply." Tillinghast Aff., ¶ 7; Claim Notes, 0002. Plaintiff's ability to understand the reason for the denial of benefits is underscored by the plain language of the STD Plan Policy, which provides that STD benefits cease as soon as a claimant voluntarily resigns. Stephens Aff., ¶ 8; STD Policy, Bates No. 0089; SPD, Bates No. 0104. Thus, even if Holm had filed for benefits prior to his October 31, 2003 resignation, they would have ended as of

November 1, 2003. In this case, Holm did not apply for benefits until December 11, 2003 – 41 days after his resignation.

In summary, this case is ripe for summary judgment because Plaintiff has not, and cannot dispute any material fact at issue in this case. The Short-Term Disability Plan documents clearly provide that a claimant must be actively employed by Fleet as a condition of benefits eligibility. Holm's last day of eligibility was his last day of work: October 31, 2003. Accordingly, Plaintiff was not covered by the Bank's disability benefits policy as of December 11, 2003 (the date he actually applied).

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Summary Judgment as to the entirety of Plaintiff's Complaint.

Respectfully submitted,

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON AND BANK OF AMERICA CORPORATION**
By their Attorneys,

Dated: July 25, 2005

/s/ Gary W. Flanagan

Gary W. Flanagan (#6632)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 528-5858

**CERTIFICATION OF SERVICE**

This is to certify that on the 25th day of July, 2005, I served the foregoing document via hand delivery to:

Anthony J. Gianfrancesco, Esq.
Baluch, Gianfrancesco, Mathieu & Szerlag
155 South Main Street
Suite 101
Providence, RI 02903
(401) 331-1434

Gary W. Flanagan
Gary W. Flanagan