UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHRISTOPHER HOLM, Plaintiff, | : | |
| v. | : | C.A. No. 04-432 |
| LIBERTY MUTUAL LIFE ASSURANCE COMPANY OF BOSTON and BANK OF AMERICA, Defendants. | : | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE LITIGATED**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 12.1(a)(1), Defendants Liberty Mutual Life Assurance Company of Boston ("Liberty Mutual") and Bank of America Corporation ("Bank of America" or the "Bank") (Liberty Mutual and Bank of America may sometimes hereinafter be collectively referred to as, "Defendants") respectfully submit their Statement of Material Facts As to Which There is No Genuine Issue to be Litigated..

**A. Background and Parties**

1. Christopher Holm is a former employee of Fleet National Bank ("Fleet"), a predecessor of Defendant Bank of America. Affidavit of Holly Stephens ("Stephens Aff."),[1] ¶ 2.

2. Effective April 1, 2004, Fleet National Bank's holding company, FleetBoston Financial Corporation, merged with Defendant Bank of America.[2] Id., ¶ 3.

3. At all relevant times, Liberty Mutual was Fleet's "Managed Disability Vendor" and the plan administrator with respect to Fleet's disability benefit plan. Affidavit of Dawn

[1] The Affidavit of Holly Stephens is attached to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment as Exhibit 1.
[2] For purposes of clarity, Defendants will use "Fleet" or the "Bank" throughout this Memorandum when referring to Plaintiff's employer.

Elynn-Tillinghast ("Tillinghast Aff."),[3] ¶ 3. In that capacity, Liberty Mutual provided claims management advice to Fleet and handled the administration of claims for benefits on the Bank's behalf. Id. Fleet, not Liberty Mutual, made the actual benefits payments to the claimants. Id.

**B. Holm's Employment History at Fleet**

4. Christopher Holm first began working for Fleet in March 1990 as a Financial/Stats Consultant in Providence, Rhode Island. Stephens Aff., ¶ 4; Employee Information Screen.

5. In or around September 1999, Holm resigned from Fleet because he was dissatisfied with his hours. Stephen Aff., ¶¶ 4-5; Employee Information Screen.

6. In or around December 2000, Holm returned to Fleet as a Senior Project Analyst in Fleet's Consumer Lending Sales & Marketing Administration Department in Providence. Stephens Aff., ¶ 6; Offer Letter. In that role, Holm earned a salary of $67,000 annually, and reported to Department Manager Steven Lacroix. Stephen Aff., ¶ 6; Offer Letter.

7. In September 2003, Holm gave Lacroix, notice of his resignation. Affidavit of Steven Lacroix ("Lacroix Aff."),[4] ¶ 3. Holm advised Lacroix that he was resigning for personal reasons, and that his last day of work would be in about 60 days. Id.

8. On October 31, 2003, his last day of work, Holm sent Lacroix an email wishing him luck in the future, and attached a formal letter of resignation. Lacroix Aff., ¶ 4; Resignation Email; Resignation Letter. Holm's Resignation Letter states:

Steven,

> Due to a variety of personal reasons I regret to inform you that I will be leaving FleetBoston effective October 31, 2003. It has

[3] The Affidavit of Dawn Elynn-Tillinghast is attached to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment as Exhibit 2.
[4] The Affidavit of Steven Lacroix is attached to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment as Exhibit 3.

> been my professional and personal pleasure to have worked with you and my other colleagues at Fleet over the past 13 years. I wish you all the best in the future and take care of yourself.
>
> Sincerely,
> Christopher J. Holm

Lacroix Aff., ¶ 4; Resignation Letter.

9. Holm's last day at Fleet was October 31, 2003. Stephens Aff., ¶ 7; Employee Information Screen. Consistent with Holm's letter of resignation, Fleet coded Holm's separation from employment as, "Voluntary – Personal Reasons." Stephens Aff., ¶ 7; Employee Information Screen.

### C. <u>Fleet's Short-Term Disability Plan, Available to Eligible *Current* Employees</u>

10. Eligible, current employees of the Bank are covered by its Short-Term Disability ("STD") Policy. Stephens Aff., ¶ 8.

11. The STD Policy applies to Fleet employees only while they are employed by the Bank. Stephens Aff., ¶ 8; STD Policy; Summary Plan Description ("SPD").

12. The STD Policy presumes that a claimant is a Fleet employee at the time an employee files a claim for benefits. The Policy states:

> All domestic full-time regular and part-time regular employees regularly scheduled to work 20 or more hours per week are eligible. Temporary employees, employees regularly scheduled to work less than 20 hours per week, and seasonal employees are excluded.

Stephens Aff., ¶ 8; STD Policy, Bates No. 0086.

13. Additionally, the STD policy provides that in order to receive benefits, a claimant must be, among other things, "actively employed" by Fleet. Stephens Aff., ¶ 8; STD Policy; SPD. An employee is "actively employed" by Fleet when he or she is:

- ***present at the employer's place of business... on the scheduled effective date of coverage***; and

- Performing the essential duties of his/her regular occupation.

(Emphasis added). Stephens Aff., ¶ 8; STD Policy, Bates No. 0092; SPD, Bates No. 0101.

14. Generally, eligible employees whose claims are approved receive STD benefits until an enumerated disqualifying event occurs. Stephens Aff., ¶ 8; STD Policy, Bates No. 0089; SPD, Bates No. 0104. One of the disqualifying events that cuts off a claimant's benefits is the claimant's voluntary resignation. Stephens Aff., ¶ 8; STD Policy, Bates No. 0089; SPD, Bates No. 0104.

15. Specifically, the STD Policy provides that an employee's STD benefits will end as of "your voluntary resignation (although employees are discouraged from resigning while disabled and eligible for STD benefits)." Stephens Aff., ¶ 8; STD Policy, Bates NO. 0089; SPD, Bates NO. 0104.

**D. <u>Procedure for Filing Claims</u>**

16. The STD Policy instructs employees who wish to file STD claims to call Fleet's Managed Disability Vendor, Liberty Mutual. Stephens Aff., ¶ 8; STD Policy, Bates No. 0087; SPD, Bates No. 0105.

17. All benefits claims are filed telephonically, and the claims administration process begins with an "intake" procedure. Tillinghast Aff., ¶ 4.

18. At the intake stage, Liberty Mutual creates a paper and electronic "Claim Notes" file, and all subsequent actions taken with respect to an employee's claim are logged in the Claim Notes database. Tillinghast Aff., ¶ 4.

19. As part of the administrative process during intake, Liberty Mutual completes a number of fields in the electronic Claim Notes database. Tillinghast Aff., ¶ 5. One of these fields is commonly referred to as the "date of disability." Id.

20. For purposes of the Liberty Mutual intake, "date of disability" does not refer to any aspect of a claimant's medical condition. Id., ¶ 6. Rather, "date of disability" refers to the first day a claimant is unable to perform the material duties of his job on an active employment basis (i.e., the first day the claimant is unable to work). Id. A claimant must be actively employed by Fleet on his "date of disability" – the first day the claimant is unable to work – in order to be eligible to receive STD benefits. Id.

**E. Holm Applies for Short-Term Disability Benefits More than a Month After He Resigned; Liberty Mutual Denies Holm's Claim; Holm Takes His Claim Through the Appeals Process; Defendants Uphold the Denial of Benefits**

***1. Liberty Mutual Denies Holm's Claim at the Initial Stages***

21. On December 11, 2003, Holm filed a claim for STD benefits. Tillinghast Aff., ¶ 7; Claim Notes, Bates No. 0007.

22. Brooke Stewart, a Case Manager at Liberty Mutual, reviewed Holm's claim at the initial stage. Tillinghast Aff., ¶ 8.

23. In reviewing Holm's claim, Stewart spoke with the Bank, and learned that Plaintiff had resigned from Fleet, and was therefore no longer eligible to receive STD benefits. Tillinghast Aff., ¶¶ 7, 9; Claim Notes, Bates No. 0003.

24. Therefore, on or around February 23, 2003, Ms. Stewart sent a letter to Holm advising him that he was no longer eligible for disability benefits. Tillinghast Aff., ¶ 10; 2/23/04 Letter. Ms. Stewart explained the denial of his benefits as follows:

> I spoke with your supervisor Steven Lacroix on February 19, 2004. He indicated that you had resigned from Fleet as of November 1, 2003. In addition, I



BOS_497685_1/MGLICKSON

> spoke with Fleet Corporate HR and they confirmed your resignation effective November 1, 2003. Since your date of disability is November 3, 2003 and your resignation was effective November 1, 2003, you are not eligible to receive short-term disability benefits with Fleet and we are unable to approve your claim.

Tillinghast Aff., ¶ 10; 2/23/04 Letter.

25. Liberty Mutual's statement that Holm's "date of disability" is November 3, 2003 means only that had Holm been eligible for benefits, the earliest date on which he could have received such benefits would have been November 3, 2003 – at which time he was no longer employed by Fleet. Tillinghast Aff., ¶ 11.

26. In March 2004, Holm's attorney wrote to Ms. Stewart advising her that her "assertion that Mr. Holm's date of disability is November 3, 2003 is incorrect," as Plaintiff had suffered from Multiple Sclerosis for many years. Tillinghast Aff., ¶ 12; 3/15/04 Letter. Thereafter, Plaintiff appealed the denial of benefits. Tillinghast Aff., ¶ 13; 4/30/04 Letter.

27. In or around May 2004, Appeal Review Consultant Ann Berry reviewed Holm's claim file, noting that his coverage had ended as of November 1, 2003. Tillinghast Aff., ¶ 15; Claim Notes, Bates No. 0001. As such, Ms. Berry advised Holm that Liberty Mutual was upholding its earlier denial of his claim. Tillinghast Aff., ¶ 15; 5/25/04 Letter. Ms. Berry advised Plaintiff as follows:

> According to FleetBoston Financial Corporation, Mr. Holm's last day worked was October 31, 2003, and he resigned effective November 1, 2003. Therefore his Short Term Disability coverage terminated effective November 1, 2003.

Tillinghast Aff., ¶ 15; 5/25/04 Letter.

### 2. *Liberty Mutual Upholds the Denial of Benefits at the Second Level of Appeal*

28. Plaintiff asked Liberty Mutual to reconsider its decision in June 2004. Tillinghast Aff., ¶ 16; 6/1/04 Letter. As such, Liberty Mutual referred Holm's claim to the second level of the appeals process. Tillinghast Aff., ¶ 17; Second Appeal Referral.

29. On or around June 7, 2004, Appeal Review Consultant Dawn Elynn Tillinghast reviewed Holm's file. Tillinghast Aff., ¶ 18. Like those before her, she concluded that Holm "was no longer eligible for Short Term Disability benefits effective November 1, 2003…" Tillinghast Aff., ¶ 18; 6/7/04 Letter; Appeal Recommendation. As such, Liberty Mutual denied Holm's claim for benefits at the second level of appeal. Tillinghast Aff., ¶ 18; 6/7/04 Letter; Appeal Recommendation.

### 3. *The Bank Upholds the Denial of Benefits at the Third and Final Stage of Appeal*

30. The third and final stage of the appeals process is administered by Fleet, not Liberty Mutual. Stephens Aff., ¶ 9. Holm appealed the denial of benefits to Fleet at the third and final stage, and Fleet upheld the denial of Plaintiff's STD claim for the same reasons set forth in the prior determinations. Id.; 9/9/04 Letter.

31. The Bank wrote to Plaintiff and, once again, explained the basis for the denial of benefits:

> …The policy also states an associate must be actively at work in order to be eligible for the benefit and, in Mr. Holm's case, he was not actively at work on 11/3/03, his first date of disability.
>
> Stephens Aff., ¶ 9; 9/9/04 Letter.

32. In or around October 2004, Plaintiff filed a Complaint alleging that "Defendants' failure to pay the benefits due the plaintiff is a breach of its obligations under the [short-term disability] policy." Complaint, ¶ 11.

Respectfully submitted,

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON AND BANK OF AMERICA CORPORATION**
By their Attorneys,

Dated: July 25, 2005

Gary W. Flanagan

Gary W. Flanagan (#6632)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 528-5858

**CERTIFICATION OF SERVICE**

This is to certify that on the 25th day of July, 2005, I served the foregoing document via hand delivery to:

Anthony J. Gianfrancesco, Esq.
Baluch, Gianfrancesco, Mathieu & Szerlag
155 South Main Street
Suite 101
Providence, RI 02903
(401) 331-1434

Gary W. Flanagan

Gary W Flanagan