UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CHRISTOPHER HOLM

V. C.A. No.: 04-4321

LIBERTY MUTUAL
LIFE ASSURANCE, CO.
AND BANK OF AMERICA

**OBJECTION**

Now comes the plaintiff, Christopher Holm, pursuant to Rule 56 of the Federal Rules of Civil Procedure and respectfully request that this Court deny Defendants' Motion for Summary Judgment in that there are genuine issues of material fact which require determination by a factfinder.

Plaintiff,
Christopher Holm
By his Attorney,

Anthony J. Gianfrancesco, Esq. (#2762)
Baluch, Gianfrancesco, Mathieu & Szerlag
155 South Main Street
Suite 101
Providence, Rhode Island 02903
(401) 331-1434
Fax: (401) 351-9653

**CERTIFICATION**

I hereby certify that a copy has been sent to **Gary W. Flanagan.**, Edwards & Angell, LLP, 2800 Financial Plaza, Providence, Rhode Island 02903, on this 2 day of **September**, 2005.

DISTRICT OF RHODE ISLAND

CHRISTOPHER HOLM

V. C.A. No.: 04-4321

LIBERTY MUTUAL
LIFE ASSURANCE, CO.
AND BANK OF AMERICA

**MEMORANDUM IN SUPPORT OF OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. FACTUAL BACKGROUND

This is a claim brought by the Plaintiff Christopher Holm seeking disability benefits pursuant to a Short Term Disability Policy issued to him by his employer Fleet Boston Bank. Mr. Holm had been employed at the bank since 1991. For the past ten years or more, he has suffered from multiple sclerosis.

In the summer of 2003, Plaintiff's condition, which is a progressive disease, worsened. Work became much more difficult for the Plaintiff and his performance began to suffer. Plaintiff advised his supervisor, Mr. Steven LaCroix, that his condition made it difficult for him to continue working much longer. Mr. LaCroix requested that Plaintiff provide a written letter of resignation. Though Defendant repeatedly contends that it was the policy of Fleet to discourage employees from "resigning while disabled and eligible to STD benefits" (Defendants' Memo at p.5 and associated Stephens Affidavit), LaCroix *never discouraged him from resigning.* Rather, he requested a letter of resignation. Plaintiff believes that Mr. LaCroix in fact made reference to the Plaintiff collecting disability benefits..

At the time of his employment Mr. Holm was issued a Short Term Disability Policy issued by Liberty Mutual Life Insurance Company. The provisions of this policy were provided for disability benefits for 6 months in the event that the employee was unable to perform his job duties. The policy also provided that benefits would not apply in the event of voluntary resignation (although employees are discouraged from resigning while disabled and eligible for STD benefits). Despite Mr. Lacroix's knowledge of Mr. Holm's medical condition and despite the provisions of the policy quoted above, Mr. Lacroix never, as he was required to do under the terms of Fleet's personnel policy, counseled Plaintiff on applying for the bank's disability benefits, nor did he counsel Plaintiff on the effect of the resignation letter that LaCroix himself solicited. In any event, as he was asked to do, Plaintiff provided written notice in September 2003 that he would resign effective November 1, 2003.

Plaintiff collected TDI benefits for several weeks. When those benefits neared an end, he applied for Fleet's STD benefits. He was advised that the benefits were denied because, due to his voluntary resignation, he was not an employee at the time of his application.

## II. STATEMENT OF DISPUTED FACTS

Plaintiff takes issue with a number of statements and characterizations included in Defendants' Statement of Undisputed Facts. Those areas of dispute, and the reasons therefor, are set forth below. It should be noted that the Plaintiff does not dispute the

provisions of the policy cited by the Defendants, Plaintiff's work history with Fleet, nor the claims administration process and intake procedures at Liberty Mutual.[1]

A. ***Defendants contend that the Plaintiff told LaCroix in September of 2003 that he was resigning for personal reasons (Defendant's Statement of Undisputed Facts, p.3, par. 7.)***

Defendant Fleet, by and through Plaintiff's Supervisor, Mr. LaCroix, was well aware of the reasons for Mr. Holms' decision to end his employment with Fleet even prior to September of 2003. Mr. Holms resigned because his MS was progressing. *Holms depo*., p. 40, attached hereto as Exhibit A. In the summer of 2003, Plaintiff advised his supervisor that things were "going downhill." Id., p. 41. He had difficulty walking, urgency in urination and problems with his balance and coordination. Id., p. 43. Plaintiff discussed these symptoms with Mr. LaCroix in the summer of 2003. Id., p. 44.

B. ***Defendants' Statement as to the date of disability, and the role of Supervisor Steven LaCroix in this determination, is disputed (Defendant's Statement of Undisputed Facts, p. 6, pars 23, 24).***

In response to Plaintiff's report that he was unable to continue working for Fleet, LaCroix asked Plaintiff what he wanted to do, whether he planned to go on disability and to "get back to" him when he figured out what he wanted to do. *Id.,* p. 41. Though Defendants' assertion that Liberty Mutual learned of Defendant's resignation through Mr. LaCroix is technically true, it does imply that Mr. LaCroix reported that Mr. Holm simply left his job, when it was well-known to Fleet that *Plaintiff was unable to perform his job duties due to his medical condition.*

When Plaintiff approached him in mid-September of 2003 relative to resigning, LaCroix advised Mr. Holm, without elaborating, that he "had other options" but that he

[1] Liberty Mutual is the plan administrator of Fleet's plan. The benefits were to be paid by Fleet and, at all times applicable herein, Liberty Mutual was acting as Fleet's agent charged with administering those benefits due to Fleet's employees. Defendants' Memo, p.2.

would have to put something in writing if he was going to resign. Ex. A, pp.46-47. His last day of work was October 31, 2003.

## III. ARGUMENT

### A. STANDARD OF REVIEW

On summary judgment, the Court must view all facts, and make all reasonable inferences in the favor of the non-moving party. *Noviello v. City of Boston,* 398 F.3d 76, 81-82 (1st Cir. 2005). To survive a summary judgment motion, the non-moving party must produce sufficient evidence to raise a genuine issue of material fact. See Fed. R. Civ. P. 56(e).

### B. THE POLICY'S PLAIN LANGUAGE REQUIRED FLEET TO INFORM, ADVISE AND COORDINATE WITH THE PLAINTIFF RELATIVE TO HIS DISABILITY CLAIM.

Plaintiff claims in the within matter that Defendants' are in breach of their respective obligations of Fleet's Short Term Disability Policy. It is the crux of Plaintiff's case that he advised his supervisors as to his progressive disease and its impact upon his work.

Even assuming Defendants' arguments to be correct, i.e., that Plaintiff was not entitled to disability benefits after his "voluntary resignation", Defendant Bank of America (Fleet) is not immune from liability under the terms of the policy. The policy language, as Defendants aptly point out, is abundantly clear. And the policy provides that the manager is required to discuss disability benefits and coordinate the application of same with Liberty Mutual.

Specifically, the policy at issue provided under the heading of:

> **Roles:**
>
> **Manager:**
>
> Discusses with Employees his or her need for short term disability leave of absence.
>
> * * *
>
> Establishes expectations of frequency of contact with the employee (taking into consideration what is appropriate given the employee's condition). Complies with requests for information with Liberty Mutual necessary for the administration of employee's claim. Upon the recommendation of Liberty Mutual and whenever possible, the manager promotes an early return to work by offering accommodations consistent with business needs. Coordinates with Liberty Mutual to ensure that appropriate return dates are established, and contacts his or her Employee Relations or HR representative if there are any problems.

Policy, Bates #0091, attached as Exhibit C to Defendants' Memorandum. Moreover, as Defendants repeatedly contend, employees are "discouraged from resigning while disabled and eligible for STD benefits." Defendants' memo. at p.5.; policy at Bates # 0089.

Here, Defendant BOA contends that Plaintiff's failure to adhere to policy guidelines relieves it of the obligation to pay benefits, but that its own failures to adhere to the same policy guidelines should be excused. In fact, the Defendant's failure directly correlate to any failure of the Plaintiff to comply with technical guidelines, as the Plaintiff was not provided with the very guidance and support that the policy was designed to offer. In fact the policy itself recognizes "the importance of providing

financial protection in the event of an illness or injury that disables the employee from working." Policy at Bates # 0086.

Rather than discourage his resignation, LaCroix asked for a resignation letter.[2] Tr., p.95. The only "accommodation" offered or suggested to Mr. Holm was a possible part-time appointment. Id.

Notwithstanding his duty to do so, LaCroix did not discuss the requirements for obtaining short term disability benefits nor did anything to assist the Plaintiff in making a claim. Tr. P.93. And despite the fact that disability benefits were mentioned in a conversation between Plaintiff and his supervisor in the summer of 2003, LaCroix never mentioned the availability of, or process of obtaining, benefits under Fleet's short-term disability policy. Id. In fact, Plaintiff had already collected TDI benefits when it occurred to him that Fleet offered a disability policy. Tr. P.74. Plaintiff testified that he believed that he had to wait for TDI to end before any STD benefits would be paid. Tr. P. 58.

[2] In fact no one at Fleet discouraged Mr. Holm from resigning, despite a policy directive to the contrary. Tr. At p.95.

WHEREFORE, as there are numerous issues as Defendants' compliance with the very policy it now seeks to enforce, Plaintiff respectfully requests that defendant's motion for summary judgment be denied.

Plaintiff,
Christopher Holm
By his Attorney,

Anthony J. Gianfrancesco, Esq. (#2762)
Baluch, Gianfrancesco, Mathieu & Szerlag
155 South Main Street
Suite 101
Providence, Rhode Island 02903
(401) 331-1434
Fax: (401) 351-9653

**CERTIFICATION**

I hereby certify that a copy has been sent to **Gary W. Flanagan.**, Edwards & Angell, LLP, 2800 Financial Plaza, Providence, Rhode Island 02903, on this 2 day of **August**, 2005.