UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHRISTOPHER HOLM,
    Plaintiff,

v.                                    C.A. No. 04-432L

LIBERTY MUTUAL LIFE ASSURANCE
COMPANY OF BOSTON, and
BANK OF AMERICA,
    Defendants.

DECISION AND ORDER

Ronald R. Lagueux, Senior District Judge.

This case is before the Court on Defendants' Motion for Summary Judgment on Plaintiff's complaint, brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Plaintiff, a former employee of Defendant Bank of America, seeks benefits allegedly due him under the company's Short Term Disability Plan, which was administered by Defendant Liberty Mutual Assurance Company of Boston. For reasons explained below, the Court grants Defendants' Motion.

**Background**

Plaintiff Christopher Holm was employed by Fleet National Bank from 1991 until November 1, 2003. In April 2004, Fleet National Bank merged with Bank of America, the named Defendant in this action. In the interests of clarity, Holm's employer will be identified as the Bank. Almost the whole time Holm worked at the Bank he suffered from multiple sclerosis, a progressive

disease.

In the summer of 2003, Holm's condition worsened and it became more difficult for him to do his job. At that time, Holm met with his supervisor, Steven LaCroix. Holm and LaCroix agree that they discussed Holm's health and his possible options, including the option of Holm going on disability. LaCroix told Holm to get back to him when he figured out what he wanted to do. Lacroix added that if Holm chose to resign, LaCroix would need a letter of resignation.

At the time of this discussion, Holm was eligible for the Bank's Short Term Disability Plan ("STD Plan"). This benefit was provided by the Bank free to all its full-time employees,[1] who were automatically enrolled in the Plan after three months of employment. The Plan, which was administered by Defendant Liberty Mutual Life Assurance Company of Boston ("Liberty Mutual"), provided disability benefits for up to twenty-five weeks.

Following his discussion with LaCroix, Holm decided to resign. He submitted a letter of resignation dated September 19, 2003, stating his intention to resign effective November 1, 2003, citing "a variety of personal reasons." Although LaCroix knew of Holm's medical condition, Holm was interested in keeping this

---

[1] There are some restrictions on eligibility, but there is no dispute as to Holm's eligibility at the time of his discussion with LaCroix.

-2-

information as private as possible, and Lacroix was respectful of his wishes.

Holm received temporary disability benefits through the State of Rhode Island from November 2003 through February 2004. On December 11, 2003, he applied for benefits under the Bank's STD Plan. In February 2004, his claim was denied by a Liberty Mutual case manager because he was no longer an active Bank employee, as was required under the terms of the STD Plan.

Holm then hired an attorney who handled the three unsuccessful appeals provided under the Plan, two with Liberty Mutual and the third and final appeal to the Bank. All denials were based on the fact that Holm was no longer a Bank employee at the time he filed his claim for benefits. Holm filed this lawsuit in October 2004.

### The Complaint

Plaintiff's Complaint states that his claim "arises out of and relates to" an employee welfare benefit plan within the meaning of ERISA. *Complaint*, ¶ 4. Plaintiff's claim is that Defendants refused to pay benefits due under the STD Plan, and that "failure to pay the benefits due the plaintiff is a breach of its obligation under the policy." *Complaint*, ¶ 11. Although no statutory citation is provided by Plaintiff, the Court will treat this as a claim for benefits under 29 U.S.C. § 1132(a)(1)(B).

## **ERISA**

Plaintiff's complaint comprises one count brought pursuant to ERISA. In their Answer, Defendants make a general denial of Plaintiff's claims. In a footnote in their Memorandum of Law, Defendants assert that the STD Plan is not an ERISA plan. In support of this assertion, Defendants have submitted the Summary Plan Description for the STD Plan, consisting of xeroxed pages 113 through 117 of a Fleet Bank benefits handbook. The handbook, in its entirety, is not part of the record before the Court. On the second page of the Summary Plan Description, there is a note which states:

> Note: The Fleet STD Plan is not subject to
> the provisions of the Employee Retirement
> Income Security Act (ERISA) of 1974 as
> described in the Administrative Information
> section of this handbook. The Plan is funded
> by Fleet and administered through a contract
> with Liberty Mutual.

The STD Plan's policy document, which is also part of the Court's record, makes no mention of ERISA.

No party appears to attach much significance to the applicability, *vel non*, of ERISA law to the dispute. Other than a case cited to elucidate the standard of review on summary judgment, Plaintiff cites no case law, ERISA or otherwise, in his memorandum of law. Similarly, Defendants cite only one case (in addition to the cases cited in their section on the standard of

review). That one case is an ERISA case.[2]

The Court is reluctant to look for trouble in the form of addressing issues not pressed by the parties. However, federal jurisdiction is an issue here. Although there is diversity of citizenship amongst the parties, Plaintiff has not alleged or demonstrated that there is at least $75,000 in controversy. 28 U.S.C. § 1332(a). Therefore, jurisdiction in this matter must rely on the presence of a federal question, pursuant to 28 U.S.C. § 1331. In sum, the only possible basis for federal jurisdiction here is ERISA. Consequently, the Court must decide whether the STD Plan is governed by ERISA, even without the assistance of the parties.

Congress enacted ERISA in order to protect employee benefits plans from financial mismanagement and abuse, by bringing them all under the consistent and uniform safeguards of federal legislation. O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 266 (1st Cir. 2001). ERISA's "particularly powerful preemptive sweep," Danca v. Private Health Care Sys., 185 F.3d 1, 4 (1st Cir. 1999), is codified in Section 1144, which provides that its provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan..." 29 U.S.C. § 1144(a). ERISA provides a broad definition for

---

[2] Moriarty v. United Tech Corp. Represented Employees Retirement Plan, 158 F.3d 157, (2d Cir. 1998).

employee benefit plans, and this definition has been divided by the First Circuit into "five essential constituents:"

> (1) a plan, fund or program (2) established or maintained (3) by an employer or by an employee organization, or by both (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits...(5) to participants or their beneficiaries.

Kelly v. Blue Cross & Blue Shield, 814 F. Supp. 220, 224 (D.R.I. 1993)(quoting Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir. 1990)).

There are some plans exempted from ERISA control, such as church plans and governmental plans. 29 U.S.C. § 1003(b). However, based on the materials presented to the Court, none of these exemptions appears to pertain to the Bank's STD Plan.

In determining whether a specific plan is an ERISA plan, the First Circuit reviews the extent of the employer's role in administering the benefits. O'Connor v. Commonwealth Gas Co., 251 F.3d at 267.

> Those obligations are the touchstone of the determination: if they require an ongoing administrative scheme that is subject to mismanagement, then they will more likely constitute an ERISA plan; but if the benefit obligations are merely a one-shot, take-it-or-leave-it incentive, they are less likely to be covered. Particularly germane to assessing an employer's obligations is the amount of discretion wielded in implementing them.

251 F.3d at 267.

Another ERISA-determining factor was identified by the First Circuit in New England Mut. Life Ins. Co. v. Baig, 166 F.3d 1 (1st Cir. 1999). In Baig, the Court analyzed an individual disability insurance policy issued directly to Baig, for which he paid the premiums and his employer reimbursed him. Explaining that the mere purchase of an insurance policy by an employer would not be enough to establish an ERISA plan, the Court wrote,

> Where insurance has been purchased by an employer, the "crucial factor in determining if a 'plan' has been established is whether the purchase of the insurance policy constituted an expressed intention by the employer to provide benefits on a regular basis." Similarly, whether a "reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits" is an important consideration.

166 F.3d at 4 (cites omitted). In Wickman v. Northwestern Nat'l Ins. Co., the Court found that the fact that the employer provided its employees with a benefits handbook and summary plan descriptions was evidence of the employer's intention to provide benefits on a regular and long-term basis. 908 F.2d at 1083.

The Bank's STD Plan is clearly an employee benefit plan as defined by the ERISA statute, and as identified by the First Circuit's "five essential constituents" test set forth in Wickman, and quoted by this Court in Kelly. An analysis of the specifics of the STD Plan demonstrates that it also includes the

other ERISA hallmarks identified by the First Circuit in O'Connor and Baig: an ongoing administrative scheme; discretion on the part of the employer in administering the plan; and a manifest intention by the employer to provide benefits on a regular basis.

The STD Plan policy document and Summary Plan Description were provided to the Court as attachments to the affidavit of the Bank's senior paralegal. The policy document describes the benefit as "leave provided by the Company to eligible employees" because "[T]he Company recognizes the importance of providing financial protection in the event of an illness or injury that disables an employee from working." The Summary Plan Description explains that, "Fleet enrolls you in the STD Plan when you are first eligible. You do not have to complete an enrollment form." The Plan is free to all eligible employees.

Liberty Mutual serves as the Plan Administrator for the Plan. In that capacity, Liberty Mutual handles the administration of claims and provides claims management advice to the Bank. Employees make claims by calling Liberty Mutual and going through a telephone intake interview. When a claim is approved by Liberty Mutual, the Bank then makes the benefit payments. If Liberty Mutual rejects a claim, employees are accorded three appeals. The first two are reviewed by Liberty Mutual, and the third appeal is reviewed by the Bank.

Both the policy document and the Summary Plan Description

outline the procedures to be followed and the functions to be performed by various employees of the Bank and Liberty Mutual. First the disabled employee notifies his or her Bank supervisor of the need to take leave. If the absence is expected to last longer than a week, the employee must contact Liberty Mutual. According to the policy document, both the Bank and/or Liberty Mutual may request medical documentation; and the Bank reserves the right to request an examination by an independent physician, at its own cost. If eligibility is established, benefits are paid through the Bank's payroll. Throughout the leave, the employee is expected to remain in regular contact with his or her Bank supervisor to discuss any changes in status, the anticipated return date, as well as any necessary workplace issues.

According to the policy terms, the Bank's Benefits Department manages the design of the Short-Term Disability Program. The policy states that the Bank's department of HR Employee Services has the following responsibilities:

- Manages the delivery of the STD program in conjunction with Liberty Mutual, Fleet's Managed Disability Vendor.

- Receives updates from Liberty Mutual as the status of employees' claims change and coordinates leave status changes with HR Operations and Corporate Payroll.

- Counsels employees and managers as necessary regarding the leave process and their associated responsibilities.

The STD Plan policy document and the Summary Plan Description both demonstrate that the Bank has ongoing responsibilities in administering the Plan, including, among other tasks, designing the Plan, enrolling employees in the Plan, handling the third-level appeals and issuing the payments through the Corporate Payroll department. The publication of the benefits handbook, the statements made therein concerning Bank policy, and the promulgation of the Summary Plan Description all are indicators of the Bank's commitment to provide benefits, and would be perceived accordingly by a reasonable employee.

The Court did not have the opportunity to review the benefits handbook in its entirety, most specifically the Administrative Information section referred to in the ERISA disclaimer Note, which may provide important information on the Plan's non-ERISA attributes. However, the Court cannot speculate as to what this information may be. Based on the information that is available in this record, the Court concludes that the STD Plan is subject to ERISA. Consequently, the Court has jurisdiction of this case, and will rely on the ERISA statute and decisions rendered thereunder in determining the outcome of this dispute.

### Standard of review

As stated above, this case is before the Court on Defendants' motion for summary judgment, brought pursuant to Rule

56 of the Federal Rules of Civil Procedure. Consequently, both parties to this dispute urge the Court to employ the standard of review set forth by that rule.

In ERISA cases, the Supreme Court has held that when a plan administrator exercises discretion in determining eligibility for benefits, then the plan administrator's decision will be reversed only if it is found by the court to be arbitrary and capricious. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). This standard is described by the Supreme Court as a deferential standard, intended to prevent or rectify an abuse of discretion by the fiduciary. Varity Corp. v. Howe, 516 U.S. 489, 514-515, (1996). Judge William Smith of this Court recently wrote,

> Even if the court disagrees with the decision, or if the employee offers a competing reasonable interpretation, the court must not disturb a plan administrator's interpretation if it is reasonable. The arbitrary and capricious standard is the "least demanding form of judicial review" and requires only that determinations be "rational in light of the plan's provision," as well as reasonable with no abuse of discretion.

Massey v. Stanley-Bostitch, Inc., 255 F. Supp. 2d 7, 11 (D.R.I. 2003) (quoting Coleman v. Metropolitan Life Ins. Co., 919 F. Supp. 573, 581 (D.R.I. 1996)).

Defendant Liberty Mutual is the Plan Administrator for the Bank's STD Plan. The policy document explains that Liberty Mutual receives all claim information, evaluates medical

-11-

information and makes a determination on the claim. The Summary Plan Description states that Liberty Mutual "will determine the medical documentation required to support the claim for benefits," and may request an examination by an independent doctor if it "deems such an examination to be necessary and appropriate." *Summary Plan Description*, p. 114. Furthermore, Liberty Mutual reviews appeals resulting from denied claims.

Because Liberty Mutual is vested with authority to administer the Plan, to extend benefits, and to decide appeals, this Court will use the 'arbitrary and capricious' standard in reviewing Plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B). In conjunction with the summary judgment standard, the Court's review is:

> The operative inquiry under arbitrary, capricious or abuse of discretion review is whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits.

Wright v. R.R. Donnelley & Sons Co. Group Benefits, 402 F.3d 67, 74 (1st Cir. 2005).

### Analysis

Defendants have consistently explained that Plaintiff's claim for short-term disability benefits was denied because the claim was made several weeks after Plaintiff's resignation became effective. Consequently, Plaintiff was no longer an active

employee, which is a prerequisite for eligibility under the STD Plan. Plaintiff argues that the Bank's failure to encourage him to seek short-term disability benefits back in the fall of 2003, rather than to resign, is a breach of its obligations under the STD Plan. Plaintiff cites language in the STD Plan policy document and the Summary Plan Description to support his position. This language appears under a section labeled, "When STD Benefits End."

> Your STD benefits will end on the earliest of:
>
> • The date you are no longer disabled,
>
> • The end of the maximum benefit period or when you become eligible for long-term disability benefits,
>
> • The date your current earnings equal or exceed 80% of your pre-disability earnings,
>
> • Your death,
>
> • Your voluntary resignation (although employees are discouraged from resigning while disabled and eligible for STD benefits), or
>
> • Your termination for breach of Fleet workplace standards.

*Summary Plan Description*, p. 115. Plaintiff maintains that in the fall of 2003 he was "disabled and eligible for STD benefits," and consequently, his supervisor Steven LaCroix should have discouraged him from resigning.

This is not a clear reading of the policy, as paraphrased by

the Summary Plan Description. The Summary Plan Description explains, "If you are pregnant, ill, or injured, and need time away from work, you should notify your supervisor or manager regarding the absence as early as possible. If your absence will be longer than seven calendar days, you must contact Liberty Mutual at [phone number]." *Summary Plan Description*, p. 116. The terms of the policy document also make it clear that the onus is on the employee to initiate the process of claiming short-term disability benefits under the STD Plan. Once a claim is approved and benefits are being paid, the language quoted above as to when benefits end becomes germane. The Court understands this language to signify that supervisors are to refrain from trying to get disabled employees, who are out on leave, to quit their jobs. Inherent in this directive is the company's understanding that, in a busy and pressured work environment, there will be some impatient supervisors who would prefer to replace a temporarily disabled worker rather than operate with less than a full team. This was not the scenario confronting Holm and LaCroix in September 2003.

It is not precisely clear what transpired between Holm and LaCroix and to what extent the option of short-term disability benefits was discussed. In his deposition, Plaintiff was asked who, if anyone, told him to apply for short-term disability benefits. He replied, "I think it's just something that occurred

to me after the fact." At any rate, Plaintiff now argues that LaCroix had an affirmative obligation to discourage him from resigning, and that LaCroix should have encouraged him to seek these benefits.

This argument fails because it relies on a misreading of the "When Benefits End" section of the policy, which pertains to the interaction between supervisors and disabled employees on leave - not to the "exit-interview" type of situation which gives rise to this lawsuit. More importantly, the argument fails because it is not consistent with the duties that courts traditionally impose on employers, plan administrators and fiduciaries in the context of ERISA lawsuits. *See* Green v. ExxonMobil Corp., 413 F. Supp. 2d 103, 112 (D.R.I. 2006).

Watson v. Deaconess Waltham Hospital, 298 F.3d 102 (1st Cir. 2002), concerned a similar dispute over long-term disability benefits. Plaintiff Watson started work at the hospital as a part-time employee. He was not eligible for long-term disability benefits and was not informed about this benefit by the human resources representative. A year later, he began to work a full-time schedule. Although he received a letter stating that he would be eligible for additional benefits, he did not learn the specifics of the new benefits. Three years later, a heart condition forced him to go back to part-time work. Several years after that, Watson learned that there was a long-term disability

insurance policy available to full-time employees. He switched back to full time and enrolled in the plan, but was only able to work for one month before deteriorating health forced him to leave work altogether. Several months after that, he applied for disability benefits. Watson's claim was denied because his disability predated his enrollment in the plan, among other reasons. In his lawsuit, Watson argued that his ineligibility for the disability benefits resulted from the Hospital's failure to inform him about the insurance at the appropriate point in his career, and that this was a breach of the Hospital's fiduciary duty. As the First Circuit described it,

> Reduced to its essence, Watson's claim is that the hospital violated its fiduciary obligation by not informing him of the existence of the LTD plan or giving him the proper plan documents when he was eligible for the plan, and by not mentioning the loss of LTD eligibility when he made the change to part-time employment in March 1996, particularly when he asked someone in Human Resources how the change would affect his medical and dental benefits.

298 F.3d at 111. The Watson Court first analyzed and dismissed his claim in connection with ERISA's technical notice and disclosure requirements, explaining that, "Technical violations of ERISA's notice provisions generally do not give rise to substantive remedies outside § 1132(c) unless there are some exceptional circumstances, such as bad faith, active concealment, or fraud." 298 F.3d at 113.

The Court then analyzed and dismissed Watson's claim according to a second strand of cases - those involving a fiduciary's failure to communicate information relevant to a beneficiary's employment decisions; and concluded that "... fiduciaries need not generally provide individualized unsolicited advice." 298 F.3d at 115. The Watson Court went on to emphasize that Watson was not misled in any way about his benefits, and that he could have learned about the disability policy "if he had attended the annual benefit fair, or if he had asked for a full listing of all benefits for which he was eligible." 298 F.3d at 116.

In another case involving the limits of a fiduciary's duties of disclosure, the First Circuit wrote,

> ... under ERISA the administrator is not a personal trustee but rather a fiduciary for the limited purpose of overseeing whatever plan it creates for what may be thousands of employees and other beneficiaries.. ...
> Absent a promise or misrepresentation, the courts have almost uniformly rejected claims by plan participants or beneficiaries that an ERISA administrator has to volunteer individualized information taking account of their peculiar circumstances.

Barrs v. Lockheed Martin Corp., 287 F.3d 202, 207-208 (1st Cir. 2002).

The reasoning of these cases provides an appropriate example for this Court in the present dispute. No one at the Bank or at Liberty Mutual misled, or neglected to inform, Holm about the STD

Plan. It is clear that Holm and LaCroix discussed the STD Plan when they met to discuss Holm's options. LaCroix, who was not an ERISA fiduciary, could perhaps have tried more strenuously to persuade Holm to take the STD Plan benefits. However, he was under no obligation to do so. Similarly, Liberty Mutual was not obligated to provide individualized advice to Holm concerning his choices. It was Holm's responsibility to educate himself about his options and determine the best course of action. At the time of his resignation, it appears he was motivated by his desire to keep his condition private and, therefore, to submit his resignation, citing "personal reasons." Later, he had second thoughts about this decision and determined "after the fact" that he would like to apply for the benefits after all. Unfortunately, once he had severed his employment with the Bank, it was too late to reconsider his decision.

After reviewing the evidence in the light most favorable to Plaintiff, the Court holds that the decision of the Defendants denying benefits was "reasoned and supported by substantial evidence," Wright v. R.R. Donnelley & Sons Co. Group Benefits, 402 F.3d 67, 74 (1st Cir. 2005), and was not arbitrary and capricious.

## Conclusion

For the reasons stated above, the Court grants summary judgment in this case in favor of Defendants. The Clerk shall

enter judgment for Defendants on Plaintiff's Complaint forthwith.

It is so ordered.

*/s/ Ronald R. Lagueux*
Ronald R. Lagueux
Senior United States District Judge
July 20, 2006